FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CHERYL ANN SIEKERMAN,

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

NO: 2:17-CV-22-RMP

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment from

Plaintiff Cheryl Ann Siekerman, ECF No. 13, and the Commissioner of Social

Security (the "Commissioner"), ECF No. 14. Ms. Siekerman sought judicial

review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claims

for supplemental security income under Title XVI of the Social Security Act (the

"Act"). The Court has reviewed the motions, the administrative record, and is

fully informed. The motions were heard without oral argument. The Court denies

1   Ms. Siekerman's motion for summary judgment, ECF No. 13, and grants the

2   Commissioner's cross-motion, ECF No. 14.

3 **BACKGROUND**

4   **A. Ms. Siekerman's Claim for Benefits and Procedural History**

5   Ms. Siekerman applied for supplemental security income through an

6   application filed on October 15, 2011. Administrative Record ("AR") 178-83.[1] Ms.

7   Siekerman was 34 years old at the time that she applied for benefits. Ms. Siekerman

8   initially alleged that her onset date was January 1, 2004. AR 178. Ms. Siekerman's

9   application for supplemental security income was denied initially and upon

10   reconsideration, and Ms. Siekerman timely requested a hearing. In her initial

11   hearing, on July 24, 2013, the parties agreed that, for the purposes of the ALJ's

12   consideration of her application, Ms. Siekerman's alleged onset date was October

13   15, 2011, the date of her supplemental security income application. AR 47. The

14   ALJ issued an unfavorable decision. *See* AR 18.

15   After the Appeals Council denied Ms. Siekerman's request for review, Ms.

16   Siekerman sought judicial review. AR 713-15. Magistrate Judge Hutton remanded

17   the case to the Commissioner for further proceedings. AR 719-36.

18   / / /

19

20   [1] The AR is filed at ECF No. 10. There is no application for disability insurance

     benefits in the record for Ms. Siekerman.

21   ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 2

**B. May 12, 2016 Hearing**

A hearing took place before Administrative Law Judge ("ALJ") Jesse K. Shumway on May 12, 2016, in Spokane, Washington, with Ms. Siekerman, represented by attorney Dana Madsen.[2]  *See* AR 625.  Ms. Siekerman responded to questions from her attorney and Judge Shumway.  A vocational expert, Polly A. Peterson, a medical expert, Judy Panek, and a psychological expert, Donna Mary Veraldi, were also present via telephone.  At this hearing, the parties determined that Ms. Siekerman's alleged onset date was February 2, 2010, the date of Ms. Siekerman's earlier application for benefits.  AR 629.

**C. ALJ's Decision**

On June 10, 2016, the ALJ issued an unfavorable decision.  *See* AR 589-622. Utilizing the five-step evaluation process, Judge Shumway found:

**Step one:** Ms. Siekerman had not engaged in substantial gainful activity since February 2, 2010, the date of her application.

**Step two:** Ms. Siekerman has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease status-post laminectomy; obesity; borderline intellectual functioning; major depressive disorder; post-traumatic stress disorder; and anti-social personality disorder.

---

[2] Attorney Dana Madsen also represented Ms. Siekerman on appeal.

**Step three:** Ms. Siekerman does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** The ALJ found that Ms. Siekerman had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except: she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; she can only occasionally reach overhead; she can tolerate only occasional exposure to extreme cold and vibration, and must avoid all exposure to hazards and moving mechanical parts; she is limited to simple, routine, and repetitive tasks requiring a reasoning level of 2 or less; and she can have no contact with the public, and only occasional superficial contact with supervisors and co-workers.

AR 603.

**Step four:** Ms. Siekerman is unable to perform past relevant work as a telemarketer, because an individual with Ms. Siekerman's limitations could not perform this work, based on the testimony of the vocational expert. AR 615.

**Step five:** Ms. Siekerman was not disabled for purposes of the Social Security Act. The ALJ considered Ms. Siekerman's age, education, work experience, and RFC, and found that there are jobs that exist in significant numbers in the national economy that Ms. Siekerman can perform. *Id.*

Based on this finding, Judge Shumway concluded that Ms. Siekerman was not disabled, as defined in the Social Security Act.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Ms. Siekerman's request for review on November 23, 2016. AR 578-81. Ms. Siekerman seeks judicial review of the Commissioner's denial of benefits.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch

inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one determines if he is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden

is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

**A. Whether the ALJ erred in rejecting Ms. Siekerman's subjective complaints**

**B. Whether the ALJ erred in rejecting the medical opinion evidence**

**DISCUSSION**

*A. Plaintiff's Subjective Complaints*

Ms. Siekerman asserts that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony regarding the extent of her impairments. ECF No. 13 at 13.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See* SSR 16-3p, 2016 SSR LEXIS 4.

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.")). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  An ALJ may consider numerous factors in making this determination, including the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and conduct, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Thomas*, 278 F.3d at 958-59.

In this case, the ALJ found that Ms. Siekerman's symptoms could be reasonably expected to produce some symptoms and that Ms. Siekerman was not malingering.  AR 604-05.  However, the ALJ found that Ms. Siekerman's conduct and the objective medical evidence in the record contradicted Ms. Siekerman's allegation of total physical disability.  AR 605.

*1. Objective Medical Evidence*

The ALJ indicated that the objective medical evidence of record did not substantiate Ms. Siekerman's alleged level of impairment.  AR 605.

An ALJ may find a claimant's testimony not credible in part or in whole, but the ALJ may not disregard the claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997); SSR 16-3p, 2016 SSR LEXIS 4.  "Contradiction with the medical

1  record is a sufficient basis for rejecting the claimant's subjective testimony."

2  *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008).  An ALJ may

3  disbelieve a claimant's testimony if the claimant submits objective medical

4  findings of an impairment that would normally produce a given symptom, but

5  testifies that she experiences the symptom to a greater degree than would normally

6  be expected.  *Id.* (noting that the ALJ must make specific findings justifying the

7  decision).

8       The ALJ noted that Ms. Siekerman's medical records reflected that although

9  she regularly reported serious pain, her medical providers did not observe that she

10  was in acute distress.  AR 605-06.  Additionally, the ALJ observed that Ms.

11  Siekerman's medical providers found pain on palpitation, but that other indicators

12  and objective imaging appeared within normal or mildly impaired ranges.  AR 605,

13  608, 609.  The ALJ noted that various medical providers diagnosed Ms. Siekerman

14  with back pain, lumbago, and lumbar, thoracic, and lumbarsacral strain.  AR 606-

15  07.  The ALJ observed that Ms. Siekerman's medical records indicate that she

16  regularly sought pain medication starting in 2010 and continuing into 2011.  AR

17  605-06.  Because later evidence suggested that Ms. Siekerman's physical

18  limitations were more significant, the ALJ gave partial weight to the opinions of

19  Ms. Siekerman's medical providers and evaluators in 2012 who found she could

20  sit, stand, and/or walk up to six hours in an eight-hour day with frequent breaks;

21

she could lift and/or carry 25 pounds frequently and 50 pounds occasionally; and she had no postural, manipulative, or environmental restrictions. AR 606-07. The ALJ stated that a medical evaluator in January 2016 found that Ms. Siekerman's cervical spine was tender to light palpitation, that she had slight disc bulges that did not cause any cord compression, and that her foraminal stenosis was not severe. AR 609. The ALJ noted that the evaluator further found that Ms. Siekerman had full range of motion in her spine, full strength in her upper extremities despite less than full efforts, and a normal gait. *Id.*

The ALJ found that Ms. Siekerman's medical evidence pertaining to her back pain was minimal between August 2013 and September 2015. AR 608. The ALJ concluded that this lack of medical evidence suggested that Ms. Siekerman was not significantly limited by her back pain for two years of the relevant period. *Id.*

Based on the medical evidence in the records relating to Ms. Siekerman's physical impairments, the ALJ concluded that Ms. Siekerman suffered from significant physical impairments, but not to the extent that she alleged. Considering the reasons articulated by the ALJ regarding Ms. Siekerman's medical records, the Court finds that the ALJ properly provided clear and convincing reasons supported by substantial evidence regarding the objective medical evidence for finding that Ms. Siekerman's claims lacked credibility.

*2. Inconsistency*

The ALJ observed that Ms. Siekerman's testimony and conduct contained several inconsistencies. AR 599. The ALJ also observed that Ms. Siekerman's testimony at the hearing conflicted with the evidence in her records. *Id.*

"Inconsistent assertions in a claimant's testimony, and between a claimant's testimony and conduct, can be specific reasons not to find the claimant credible." *Rusten v. Comm'r Soc. Sec.*, 468 Fed.Appx. 717, 719 (9th Cir. 2012).

The ALJ discussed Ms. Siekerman's activities of helping her mother, cooking, climbing stairs, cleaning her room, taking public transportation, visiting her daughter, maintaining friendships, engaging in social activities, and having romantic relationships with men. AR 599, 609-10, 613-14. At the hearing, Ms. Siekerman testified that she did not go on dates and that she had only one friend, despite describing several social interactions with different individuals. AR 664, 668-72.

The ALJ also discussed Ms. Siekerman's reports to her counselor that she had sold her prescription medication to pay household expenses. AR 607. The ALJ asked Ms. Siekerman about her statements to her counselor at the hearing, and Ms. Siekerman denied any memory of making the statements, in addition to denying that she sold her medications. AR 665-67.

The Court finds that the ALJ has not erred by setting forth clear and convincing reasons supported by substantial evidence for finding Ms. Siekerman's alleged impairments lacking in credibility due to her inconsistent testimony.

*3. Failure to Take Medications*

The ALJ found that Ms. Siekerman's lack of compliance with her medications and her reported sale of her prescription medications undermined her credibility. AR 607.

"An ALJ may properly consider evidence of a claimant's substance use in assessing credibility." *Barrett v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 26993, *12 (E.D. Wash. Feb. 20, 2018) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001)).

The ALJ noted that in 2014 Ms. Siekerman reported in counseling sessions that she had sold her prescribed narcotic medication. AR 606, 608. While Ms. Siekerman denied selling her pain medication during the hearing, AR 665, and denied telling her counselor that she had sold her pain medication, AR 665-67, the ALJ found Ms. Siekerman's denial unconvincing given Ms. Siekerman's regular reports of selling her medication to pay for household expenses. AR 606. The ALJ concluded that although it was possible that Ms. Siekerman did use some of her medication, "the fact that she routinely requested refills for medication that she

did not use suggests that her pain was not as problematic as she reported to her medical providers." *Id.*

The ALJ's finding regarding Ms. Siekerman's medication use is supported by substantial evidence in the record. Therefore, it was proper for the ALJ to conclude that Ms. Siekerman's reported failure to take her prescribed pain medications undermined the credibility of Ms. Siekerman's subjective complaints.

*4. Motivation*

The ALJ discussed Ms. Siekerman's lack of motivation to seek employment. AR 611. An ALJ may properly consider the issue of motivation in assessing credibility. *See Matney v. Sullivan*, 981 F.2d 1016, 1021 (9th Cir. 1992). The Ninth Circuit has held that "poor work history" or a showing of "little propensity to work" during one's lifetime may be considered as a factor which negatively affects a claimant's credibility. *Thomas*, 278 F.3d at 959.

The ALJ indicated that Ms. Siekerman's limited work history and communications with her counselor conveying a lack of desire to seek work suggested that she was not motivated or interested in working. AR 611. The possibility that Ms. Siekerman may not be motivated or interested in working is supported in the record, and, thus, is another proper consideration for the ALJ in assessing Ms. Siekerman's credibility in this case.

1    Therefore, the Court finds that the ALJ has not erred by providing clear and

2  convincing reasons, based on substantial evidence, to support the ALJ's conclusion

3  that Ms. Siekerman's testimony lacked credibility.

4      ***B. Medical Opinion Testimony***

5      Ms. Siekerman argues that the ALJ failed to provide clear and convincing

6  reasons based on substantial evidence when the ALJ assigned "little weight" to the

7  report of Ms. Siekerman's examining physicians.  ECF No. 13 at 16-19.

8      The views of treating and examining physicians are accorded great deference,

9  deserving substantial weight, and can only be rejected with findings that are

10 supported by clear and convincing reasons that are based on substantial evidence.

11 *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even when a treating or

12 examining physician's opinion is contradicted by another physician, the ALJ cannot

13 reject it without setting forth specific and legitimate reasons supported by substantial

14 evidence.  *Id.*  Furthermore, "when evaluating conflicting medical opinions, an ALJ

15 need not accept the opinion of a doctor if that opinion is brief, conclusory, and

16 inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211,

17 1216 (9th Cir. 2005).

18     When an ALJ fails to provide adequate reasons for rejecting a treating or

19 examining doctor's opinion, that opinion is credited as a matter of law.  *Lester*, 81

20 F.3d at 834 (citing *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.1989)).

21

"[W]here there are no outstanding issues that must be resolved before a proper disability determination can be made," the district court need not remand "solely to allow the ALJ to make specific findings" regarding the rejected testimony and the district court may "take that testimony to be established as true." *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

However, an ALJ's error may be deemed harmless if, in light of the other reasons supporting the overall finding, it can be concluded that the error did not "affect[ ] the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (describing the harmless error test as whether "the ALJ's error did not materially impact his decision"); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (holding that an error is harmless if it was "inconsequential to the ultimate nondisability determination"). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

*1. Dr. Debra Brown, Ph.D.*

The ALJ assigned little weight to Dr. Debra Brown's evaluation of Ms. Siekerman, which was performed in conjunction with Ms. Siekerman's application for disability benefits through Washington State. AR 602, 613. The ALJ assigned Dr. Brown's opinion little weight because it 1) was "primarily based on the

claimant's self-reports" and 2) was "performed for purposes that differ from the determination of disability under the Social Security Act." AR 602, 613. Ms. Siekerman argues that the ALJ improperly rejected Dr. Brown's evaluation and that the limitations found by Dr. Brown would render Ms. Siekerman unemployable. ECF No. 13 at 19.

The first reason the ALJ provided for discounting Dr. Brown's opinion was that it was based upon Ms. Siekerman's self-reports. AR 602, 613. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

In this case, the ALJ found Ms. Siekerman lacked credibility and concluded that Dr. Brown's opinion was "primarily" based on Ms. Siekerman's self-reports. AR 613. Ms. Siekerman argues that Dr. Brown's opinion was based instead upon Dr. Brown's review of Dr. Greene's reports from January and June of 2011, her clinical interview, a mental status examination, and several tests performed. ECF No. 13 at 17. The ALJ notes Dr. Brown's findings resulting from the tests performed, but also indicates that Dr. Brown's conclusions are inconsistent with her own findings regarding the "mild" severity of the claimant's depression, anxiety, and avoidance. AR 613.

1   The second reason the ALJ provided for discounting Dr. Brown's opinion was

2   that it was performed in conjunction with Ms. Siekerman's application for disability

3   benefits through Washington State, rather than specifically for a social security

4   determination.  AR 602, 613.  "[T]he purpose for which medical reports are prepared

5   does not provide a legitimate basis for rejecting them."  *Henderson v. Astrue*, 634

6   F.Supp. 1182, 1192 (E.D. Wash. 2009).  Defendant does not contend that this was a

7   proper reason for discounting Dr. Brown's opinion, and the Court finds that the ALJ

8   erred in discounting Dr. Brown's assessment because it was not performed

9   specifically for social security determination purposes.

10      However, the ALJ provided another proper reason for discounting Dr.

11  Brown's opinion.  Therefore, Court finds that the ALJ did not err in assigning little

12  weight to Dr. Brown's opinion.

13  *2. Dr. William Greene, Ph.D.*

14      The ALJ assigned little weight to Dr. William Greene's evaluation of Ms.

15  Siekerman.  AR 598-99.  Ms. Siekerman argues that the ALJ improperly rejected Dr.

16  Greene's evaluation by "stale-dating" Dr. Greene's opinion.  ECF No. 13 at 18.

17  Defendant contends that the ALJ properly found that the evidence created and

18  submitted after the previous ALJ decision indicated that Dr. Greene's conclusions

19  were not consistent with the record as a whole, especially considering Ms.

20

21

Siekerman's reports of activities outside her home and her sales of her prescription medication. ECF No. 14 at 17.

The ALJ assigned little weight to Dr. Greene's opinion for three reasons: 1) the opinion was based on Ms. Siekerman's self-reports; 2) Ms. Siekerman's conduct before the ALJ affected the legitimacy of the test results Dr. Greene obtained; and 3) Dr. Greene's opinion was not consistent with the record as a whole given the additional evidence before the ALJ. AR 599-600.

The ALJ observed that Ms. Siekerman's reports of her activities are inconsistent with the information she provided to Dr. Greene. AR 599. An ALJ may discount a medical provider's opinion if "the provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence." *Ghanim*, 763 F.3d at 1162. The ALJ found that Dr. Greene's opinion was largely based on Ms. Siekerman's unreliable self-reports and, for that reason, assigned little weight to Dr. Greene's assessment regarding Ms. Siekerman's social functioning and ability to work. AR 598-99.

The ALJ next stated that Ms. Siekerman's willingness to misinform the ALJ at the hearing detracted from the legitimacy of her test scores with Dr. Greene. AR 599. It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ noted Dr. Greene's impression that Ms. Siekerman "tended to endorse items that would reflect an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 21

unfavorable impression or represent 'extremely bizarre or unlikely symptoms.'" *Id.* Although the ALJ observed that Dr. Greene did not conclude that Ms. Siekerman endorsed "unlikely" symptoms for secondary gain, the ALJ found the test results reported by Dr. Greene unreliable. *Id.*

Finally, the ALJ found that Dr. Greene's opinion was not consistent with the record as a whole. AR 599-600. The ALJ considered the medical opinions of several other providers and found that Dr. Greene's conclusions regarding Ms. Siekerman's concentration, persistence, and pace abilities were generally consistent with the record. AR 599-601. However, the ALJ found that Dr. Greene's conclusions lacked explanations for the limitations assessed, in contrast to the opinion of Dr. Tushar Kumar, M.D. AR 600. As the Court stated above, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

Therefore, the Court finds that the ALJ has not erred by setting forth specific and legitimate reasons supported by substantial evidence for discounting Dr. Greene's opinion. *See Lester*, 81 F.3d at 830.

*3. Dr. Judy Panek, M.D.*

The ALJ assigned great weight to medical expert Dr. Judy Panek's assessment of Ms. Siekerman given at the hearing. AR 610. Ms. Siekerman argues that the ALJ

should not have given great weight to Dr. Panek's revised opinion, alleging that Dr. Panek changed her opinion as a result of the ALJ's questions about Ms. Siekerman's noncompliance with her prescribed medications. ECF No. 13 at 18-19.

An ALJ may properly rely upon a testifying doctor's opinion as long as other evidence in the record supports those findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citation omitted).

The record indicates that the exchange between Dr. Panek and the ALJ involved the introduction of additional information provided in a hypothetical format, rather than any concerted effort to manipulate or persuade. AR 638-39. Dr. Panek indicated that, if Ms. Siekerman had sold rather than used her medications, Dr. Panek's opinion regarding Ms. Siekerman's limitations would change. AR 639. The ALJ found the evidence of record regarding Ms. Siekerman's sale of her prescribed medications credible, and accordingly gave greater weight to Dr. Panek's revised opinion. AR 610. Therefore, the Court finds the ALJ's reliance on Dr. Panek's opinion proper.

With regards to the medical opinion testimony, the Court finds that the ALJ has not erred by setting forth specific and legitimate reasons supported by substantial evidence for assigning little weight to the opinions of Drs. Brown and Greene, and for assigning greater weight to the opinion of Dr. Panek.

# CONCLUSION

Ms. Siekerman argues that the ALJ's decision should be reversed and remanded for an immediate award of benefits. ECF No. 13 at 19. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that the ALJ's decision is supported by substantial evidence and free of any harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment**, ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Clerk is directed to enter this Order, enter Judgment for Defendant, provide copies to counsel, and **close this case**.

**DATED** March 7, 2018.

_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
United States District Judge